# United States Court of Appeals
## For the First Circuit

No. 01-1589

UNITED STATES,

Appellee,

v.

JEREMY BENDER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell and Cyr, Senior Circuit Judges.

Jane Elizabeth Lee for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Paula D. Silsby, United States Attorney, was on brief for appellee.

September 23, 2002

**CAMPBELL, <u>Senior Circuit Judge</u>**.  This is an appeal from the judgment of conviction entered against Jeremy Bender ("Bender").  Bender was charged and convicted under the Armed Career Criminal Act of possession of four firearms as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (2000).  On appeal, Bender contends that the district court erred when it declined to exclude the testimony of Smokey Heath ("Heath"), a government witness.  Bender argues that Heath's testimony should have been excluded because the government violated its duty under <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963), when it delayed disclosure of impeaching material regarding Heath.  Finding no error, we affirm.

**I.      Background**

We describe briefly the background of this case at this juncture and add more detail as it becomes relevant to the legal analysis.  On November 29, 2000, a grand jury returned a four count indictment against Bender for possession of four firearms - three revolvers identified in counts one, two, and four, and two rifles (a semiautomatic and a lever-action) identified in count three - as a convicted felon.

Prior to the start of trial, defense counsel made a timely request from the government for all <u>Brady</u> material.  The request for <u>Brady</u> material included "the details or evidence concerning any witness, especially any informants, who is or was [sic] suffering from any mental disability, emotional disturbance, drug addiction or alcohol addiction during the past fifteen years."

The government responded that it "under[stood] and accept[ed] its obligations under Brady" and that it would provide the materials consistent with the procedural requirements of case law.

Trial began on January 16, 2001. In support of its case, the government offered the testimony of 27 individuals. The evidence undisputedly linked Bender to the four weapons. The most damning testimony came from Kevin Lepine and Chuckie Lepage, both testifying pursuant to plea agreements. Kevin Lepine stated that he had sold Bender two of the revolvers identified in the indictment. Chuckie Lepage testified that he and Bender had planned and executed a number of residential burglaries in which they stole the remaining guns identified in the indictment, including two semiautomatic .45 pistols, a .357 magnum with a scope, a .22 semiautomatic, and two hunting rifles. Bender was further linked to the burglaries through pawn receipts indicating that he hocked several items stolen on those occasions, and through the seizure, in Bender's basement, pursuant to a search warrant, of personal items belonging to the victims of the burglaries. Testimony by the victims of the burglaries identified the items taken from their homes and the stolen guns.

The jury also heard testimony from Heath. According to Heath, in May 1999, while Bender was incarcerated awaiting trial, he confessed details of his crime to Heath, himself an inmate in state custody, and sought Heath's assistance to discredit Chuckie Lepage. Instead, Heath contacted the Maine Violent Crime Task Force and disclosed Bender's admissions.

-3-

On the Friday of a three-day weekend, just prior to the start of trial, Heath told the Assistant United States Attorney that, while he was incarcerated in state prison, he had been taken to the Augusta Mental Health Institute ("AMHI"), a state mental hospital. The prosecutor immediately notified defense counsel, prepared a release for Heath's signature, and arranged to have copies of AMHI's records brought to the federal courthouse the following Tuesday, the first day of trial. The medical records revealed that Heath may have experienced auditory hallucinations while incarcerated, or in the alternative, that Heath was malingering to avoid his legal dilemmas. While the court denied defense counsel's request to preclude Heath's testimony, it offered to delay the testimony for "another day or so." Defense counsel maintained that such a brief continuance was not an adequate remedy, and instead elected to use the information in the AMHI records to cross-examine Heath and to argue to the jury.

After a two-day trial the jury returned verdicts of guilty on all four counts. Bender was sentenced to serve 293 months in prison on each count, to be served concurrently, and to serve concurrent supervised release terms of five years on each count.

This appeal followed.

## II.    Discussion

Bender seeks reversal of his conviction on the grounds that the government failed to timely disclose Heath's medical treatment records in violation of Brady v. Maryland, 373 U.S. 83

(1963), and Giglio v. United States, 405 U.S. 150 (1972), thus impairing his ability to defend the case. He contends that the district court erred when it failed to recognize the prejudicial impact and allowed Heath's testimony. We do not find these contentions persuasive.

First, it is questionable whether the federal government's duty under Brady was triggered given that Heath's mental health records were never in its possession or under its control. United States v. Sepulveda, 15 F.3d 1161, 1179 (1st Cir. 1993); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991). This court has stated that "the rigors of Brady usually do not attach to material outside the federal government's control." Sepulveda, 15 F.3d at 1179. Heath, at all relevant times, was a prisoner in the custody and control of the State of Maine. He was not in federal custody. He testified pursuant to a subpoena. AMHI is a state-owned and operated mental health facility. The prosecution asserts that it was caught unawares - it did not know of Heath's mental health records. When it discovered their existence, it acted promptly and appropriately.

Bender suggests that after he requested information relative to the mental health of a government witness, the prosecutor had a duty, once he knew someone was to be a witness, to find and disclose that information if it existed - regardless of where or with whom the information rested. To support this proposition, Bender relies on our decision in United States v. Osorio, 929 F.2d 753 (1st Cir. 1991), in which we stated that a

prosecutor "using a witness with an impeachable past has a constitutionally derived duty to search for and produce impeachment evidence requested regarding a witness." Id. at 761.

Neither the relevant Supreme Court precedent under Brady nor our decision in Osorio requires a prosecutor to seek out and disclose exculpatory or impeaching material not in the government's possession. To comply with Brady the individual prosecutor has a duty to find any evidence favorable to the defendant that was known to those acting on the government's behalf. Strickler v. Greene, 527 U.S. 263, 280 (1999). Such persons include other members of the prosecuting team, including police investigators working for the prosecution. Kyles v. Whitley, 514 U.S. 419, 437 (1995). In Osorio, the prosecutor had failed to discover - from colleagues within his own office - that the prosecution's chief witness was a major drug dealer. 929 F.2d at 756. We held that a "prosecutor charged with discovery cannot avoid finding out what 'the government' knows, simply by declining to make reasonable inquiry of those in a position to have relevant knowledge." Id. at 761. There is no evidence here that the prosecutor, or anyone acting on behalf of the federal government, was aware of Heath's mental health history until Heath disclosed the information on the eve of trial.

Bender's argument that the government had a duty under Brady is further weakened by evidence that Bender himself was aware of Heath's mental health history prior to the disclosure of the AMHI records. Brady applies to material that was known to the

prosecution but unknown to the defense.  United States v. Soto-Alvarez, 958 F.2d 473, 477 (1st Cir. 1992) (citing United States v. Agurs, 427 U.S. 97, 102 (1976)).  Heath testified that he had told Bender, prior to Bender's trial, that he had been taken to AMHI for a "nervous breakdown."  Prior to trial, defense counsel had the opportunity to interview Heath and examine him on the stand, under oath, during an evidentiary hearing on Bender's motion to suppress particular statements, including his confession to Heath.  During the oral argument to preclude Heath's testimony, defense counsel informed the court that Heath had applied for SSI benefits "because of his mental disability."  Thus, the defendant was on notice that Heath may have had a "mental disability" and defense counsel had ample opportunity and reason to explore Heath's competence to testify months prior to the start of trial.

While the absence of a Brady violation ends the matter, even if we were to assume, for purposes of argument, the existence of a Brady problem, Bender has utterly failed to demonstrate prejudice arising from the delay.  A defendant must show that "learning the information altered the subsequent defense strategy, and [that] given a more timeous disclosure, a more effective strategy would likely have resulted."  United States v. Lemmerer, 277 F.3d 579, 588 (1st Cir. 2002) petition for cert. filed, (July 11, 2002) (No. 02-5207) (quoting United States v. Devin, 918 F.2d 280, 290 (1st Cir. 1990)).  It is not enough for Bender merely to assert that he would have conducted cross-examination somewhat differently.  United States v. Smith, 292 F.3d 90, 103 (1st Cir.

-7-

2002).  At the very least, he needs to show that a plausible strategic option was foreclosed by the delay.  Id.  The impact of the delayed disclosure on Bender's cross-examination of Heath turns, in part, on "the extent the defendant actually managed to use the [disclosed material] despite the delay." United States v. Ingraldi, 793 F.2d 408, 412 (1st Cir. 1986).

We find little reason to believe that an earlier disclosure of the AMHI records would have improved Bender's defense.  Bender suggests that his cross-examination of Heath would have been more effective.  Had the records been earlier disclosed he says he could have "confronted Heath with the evidence of his malingering and manipulation of his symptoms to avoid legal difficulties;" obtained the services of a medical expert to decipher the medical terminology in the records; and subpoenaed Heath's additional mental health records.

Defense counsel, in fact, conducted an effective and thorough cross-examination of Heath along these very lines by using the AMHI records and his criminal history to attack his credibility.  Defense counsel questioned Heath about the "nervous breakdown" that led to his 30-day commitment to AMHI.  He asked whether Heath reported auditory hallucinations.  He questioned Heath about the mental health treatment he received prior to his commitment to AMHI.  He pressed Heath about his desperation to avoid incarceration, that included swallowing a metal object, and suggested that perhaps it also included fabricating a confession to garner favor with law enforcement officials.  He elicited testimony

that Heath had indeed asked for favors from law enforcement officials after he disclosed Heath's confession - specifically that he be transferred to a different, more congenial facility. He brought out Heath's prior convictions for burglary, kidnapping and terrorizing, and gross sexual assault. We conclude that any delay in the disclosure of Heath's AMHI records did not impair defense counsel's effective use of the information or hinder a presentation of the defense. <u>Devin</u>, 918 F.2d at 289.

We find no basis for reversing Bender's conviction. The judgment of the district court is <u>affirmed</u>.