WALLACE, Judge.
 

 Michael R. Murphy appeals the summary denial of his motion for postconviction relief filed in accordance with Florida Rule of Criminal Procedure 3.850. We reverse and remand with instructions to grant an evidentiary hearing or to attach the relevant portions of the record that conclusively refute Mr. Murphy’s claims.
 

 I. THE PROCEDURAL HISTORY
 

 On January 5, 1996, Mr. Murphy was convicted of first-degree murder and grand theft after a jury trial. We affirmed Mr. Murphy’s convictions but reversed and remanded for resentencing.
 
 Murphy v. State,
 
 694 So.2d 835, 835 (Fla. 2d DCA 1997). Mr. Murphy filed motions under Florida Rule of Criminal Procedure 3.850 on August 13, 1999, and December 15, 2005. We affirmed without opinion the denials of these two rule 3.850 motions.
 
 Murphy v. State,
 
 937 So.2d 132 (Fla. 2d DCA 2006) (table decision);
 
 Murphy v. State,
 
 864 So.2d 414 (Fla. 2d DCA 2003) (table decision). Mr. Murphy unsuccessfully sought federal habeas relief after our affirmance of the denial of his second rule 3.850 motion.
 
 Murphy v. Sec’y, Dep’t of Corn.,
 
 279 Fed.Appx. 877 (11th Cir.2008).
 

 On May 27, 2008, Mr. Murphy filed a third rule 3.850 motion in which he
 
 *1221
 
 claimed (1) that newly discovered scientific evidence demonstrated that the comparative bullet-lead analysis used by the State and described to the jury during his trial has been abandoned; (2) that he was denied his right to due process under
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the State failed to disclose favorable scientific evidence regarding comparative bullet-lead analysis; and (3) that he was denied his right to due process under
 
 Giglio v. United States,
 
 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), when the State intentionally permitted false or misleading evidence based on comparative bullet-lead analysis to be presented to the jury and used to obtain his convictions. The post-conviction court summarily denied all postconviction relief on June 9, 2008. Afterward, Mr. Murphy filed a motion for rehearing. The postconviction court denied the motion for rehearing. This appeal followed.
 

 II. THE NEWLY DISCOVERED EVIDENCE CLAIM
 

 In ground one of Mr. Murphy’s motion, he alleged that the State had presented evidence from an FBI expert on comparative bullet-lead analysis that bullets found at the crime scene came from a box of bullets found in Mr. Murphy’s possession. Mr. Murphy claims that on November 19, 2007, he discovered a news article
 
 [1]
 
 indicating that the scientific theory used to determine that the bullets from the crime scene came from the box in his possession was flawed and that FBI experts had been falsely testifying about the accuracy or reliability of comparative bullet-lead analysis. Mr. Murphy affirmatively alleged that this newly discovered evidence (1) was unknown at the time of trial, (2) could not have been discovered by the exercise of due diligence, and (3) would probably produce an acquittal on retrial. The postcon-viction court denied relief on this ground because the news article was not evidence. The postconviction court also found that any newly discovered evidence undermining comparative bullet-lead analysis would not probably produce an acquittal on retrial because the FBI expert’s testimony was cumulative and another witness testified that Mr. Murphy admitted that he had committed the murder.
 

 On appeal, Mr. Murphy argues that the postconviction court erred when it denied his motion because the news article was not evidence. He contends that his motion cited “studies, investigative reports, and
 
 *1222
 
 potential witnesses” as sources of the newly discovered evidence. Mr. Murphy’s motion cites a 1997 report by the Office of the Inspector General of the United States Department of Justice that Mr. Murphy claims criticized the FBI laboratory and the FBI agents working there. The motion also refers to a 2004 report by the National Research Council on comparative bullet-lead analysis that concluded that “‘the statistical methods and its expert testimonies were flawed’ ” and that “ ‘available data does not support any statement that a crime bullet came from a particular box of ammunition.’ ” In
 
 Moss v. State,
 
 860 So.2d 1007, 1008 (Fla. 5th DCA 2003), the Fifth District reversed the summary denial of a rule 3.850 motion alleging newly discovered evidence based on the 1997 report cited by Mr. Murphy. And in
 
 Clemons v. State,
 
 392 Md. 339, 896 A.2d 1059, 1078 (2006), the Court of Appeals of Maryland relied on such studies when it said that
 

 a genuine controversy exists within the relevant scientific community about the reliability and validity of [comparative bullet-lead analysis]. Based on the criticism of the processes and assumptions underlying [comparative bullet-lead analysis], we determine that the trial court erred in admitting expert testimony based on [comparative bullet-lead analysis] because of the lack of general acceptance of the process in the scientific community.
 

 Thus we agree that these reports constitute evidence.
 

 Our conclusion that the reports explaining the problems with comparative bullet-lead analysis do constitute evidence leads us to the question of whether they could also qualify as “newly discovered evidence.” Newly discovered evidence is evidence that was unknown at the time of trial and could not have been discovered by the use of due diligence.
 
 Rogers v. State,
 
 957 So.2d 538, 552 (Fla.2007). In his motion, Mr. Murphy alleged that the problems with the testimony of the FBI’s expert were unknown to him and his trial counsel until November 19, 2007; could not have been discovered by the exercise of due diligence; and would probably produce an acquittal on retrial. In this regard, Mr. Murphy alleged:
 

 [T]he circumstances under which the evidence was discovered[ ] and the nature of the evidence clearly demonstrate[ ] that it was unknown to both the movant and defense counsel[ ] and could not have been discovered by the exercise of due diligence.
 

 Because the postconviction court summarily denied Mr. Murphy’s postconviction motion without granting him an evidentiary hearing, we must accept the factual allegations of the motion as true to the extent that they are not refuted by the record.
 
 See Floyd v. State,
 
 808 So.2d 175, 182 (Fla.2002) (citing
 
 Occhicone v. State,
 
 768 So.2d 1037, 1041 (Fla.2000)). Accepting the motion’s unrefuted factual allegations as true, we cannot agree with the postcon-vietion court’s conclusion that the reports on comparative bullet-lead analysis could not qualify as newly discovered evidence.
 
 [2]
 

 
 *1223
 
 The postconviction court also denied this claim because any newly discovered evidence about comparative bullet-lead analysis would probably not produce an acquittal on retrial. In particular, the postconviction court noted that the relevant FBI expert testimony was cumulative and that Mr. Murphy admitted to committing the murder. However, “[w]hile the postconviction court refuted [Mr. Murphy’s] allegations by citing to the transcript and sometimes quoting from it, it did not attach the portions of the record it cited, as required by rule 3.850(d).”
 
 Livingston v. State,
 
 16 So.3d 276, 277 (Fla. 2d DCA 2009). Accordingly, we reverse and remand for the postconviction court to attach the relevant portions of the record conclusively refuting this claim or to grant an evidentiary hearing on this ground.
 

 III. THE
 
 BRADY
 
 CLAIM
 

 Ground two asserted that the State failed to comply with
 
 Brady
 
 when it did not disclose a 1991 FBI study,
 
 [3]
 
 a 1994 federal investigation, and the 2004 National Research Council report that undermined the accuracy or reliability of comparative bullet-lead analysis. Mr. Murphy’s motion alleges that the FBI experts used by the State, as members of the FBI Crime Lab, knew about the problems affecting the accuracy or reliability of comparative bullet-lead analysis as early as 1991 and were aware of misconduct by the FBI as early as 1994. Mr. Murphy cited
 
 United States v. Bender,
 
 304 F.3d 161 (1st Cir.2002), to support his claim that “Knowledge of these findings must be imputed to the prosecutor, as the FBI Crime Lab was acting on behalf of the State.”
 

 The postconviction court denied this claim because Mr. Murphy did not suggest that “the prosecution in this ease knew or should have known, at the time of trial or even after, that their evidence was deficient.” On his motion for rehearing, Mr. Murphy pointed out that his rule 3.850 motion alleged that the FBI’s knowledge of the favorable reports must be imputed to the State under
 
 Bender.
 
 In
 
 Bender,
 
 the court explained that “[t]o comply with
 
 Brady
 
 the individual prosecutor has a duty to find any evidence favorable to the defendant that was known to those acting on the government’s behalf. Such persons include other members of the prosecuting team, including police investigators working for the prosecution.” 304 F.3d at 164 (citation omitted). The prosecution had an obligation to disclose “favorable evidence known to others acting on the government’s behalf in the case.”
 
 Archer v. State,
 
 934 So.2d 1187, 1203 (Fla.2006). “The postconviction court is in error to the extent that the court’s order is read to mean that ... the prosecutor’s obligation was only to give to [Mr. Murphy] favorable
 
 *1224
 
 evidence which was in the prosecutor’s personal possession.”
 
 Id.; see also Commonwealth v. Lykus,
 
 451 Mass. 310, 885 N.E.2d 769, 781-83 (2008) (holding that the FBI’s knowledge of favorable evidence could be imputed to state prosecutors). Thus we cannot agree with the postconviction court’s conclusion that this claim is without merit.
 

 Because Mr. Murphy’s motion was facially sufficient, we reverse and remand for the postconviction court to attach the relevant portions of the record that conclusively refute Mr. Murphy’s motion or to grant an evidentiary hearing on this ground.
 

 IV. THE
 
 GIGLIO
 
 CLAIM
 

 Mr. Murphy’s third ground alleged that based on the 1991 FBI study, the State should have known that the FBI expert’s testimony was false and misleading. The postconviction court did not rule on this claim. Accordingly, we reverse and remand to allow the postconviction court to consider the claim.
 
 See Kafus v. State,
 
 933 So.2d 1267, 1267 (Fla. 2d DCA 2006);
 
 Calzada v. State, 934
 
 So.2d 541, 542 (Fla. 3d DCA 2006).
 

 V. CONCLUSION
 

 For these reasons, we reverse the post-conviction court’s summary denial of Mr. Murphy’s rule 3.850 motion and remand for further proceedings consistent with this opinion.
 

 Reversed and remanded.
 

 KHOUZAM and MORRIS, JJ„ Concur.
 

 [1]
 

 . John Solomon,
 
 FBI’s Forensic Test Full of Holes,
 
 Wash. Post, Nov. 18, 2007, at A01,
 
 available at
 
 http://www.washingtonpost.com/ wpdyn/content/article/2007/11/17/AR 2007111701681.html. The article explains:
 

 Hundreds of defendants sitting in prisons nationwide have been convicted with the help of an FBI forensic tool that was discarded more than two years ago. But the FBI lab has yet to take steps to alert the affected defendants or courts, even as the window for appealing convictions is closing, a joint investigation by The Washington Post and "60 Minutes” has found.
 

 The science, known as comparative bullet-lead analysis, was first used after President John F. Kennedy’s assassination in 1963. The technique used chemistry to link crime-scene bullets to ones possessed by suspects on the theory that each batch of lead had a unique elemental makeup.
 

 In 2004, however, the nation's most prestigious scientific body concluded that variations in the manufacturing process rendered the FBI's testimony about the science "unreliable and potentially misleading.” Specifically, the National Academy of Sciences said that decades of FBI statements to jurors linking a particular bullet to those found in a suspect’s gun or cartridge box were so overstated that such testimony should be considered "misleading under federal rules of evidence.”
 

 A year later, the bureau abandoned the analysis.
 

 Id.
 

 [2]
 

 . The postconviction court did not address the issue of whether Mr. Murphy's motion was timely filed. The reports could not have been discovered at the time of Mr. Murphy’s trial because they were not prepared until 1997 and 2004, respectively.
 
 The Washington Post
 
 article indicates that the FBI abandoned comparative bullet-lead analysis in 2005 but, as of November 18, 2007, had not informed defendants about the problems related to this type of evidence. Solomon,
 
 supra,
 
 at A01. Mr. Murphy alleged that he first learned about the reports on November 19, 2007. He filed his motion on May 27, 2008, less than two years later. However, we express no opinion concerning whether Mr. Murphy’s claims of newly discovered evidence based on the unreliability of comparative bullet-lead
 
 *1223
 
 analysis were actually “filed within two years of the time when [the] evidence upon which avoidance of the time limit was based could have been discovered through the exercise of due diligence.”
 
 Bolender v. State,
 
 658 So.2d 82, 85 (Fla.1995);
 
 see also Glock v. Moore,
 
 776 So.2d 243, 249-51 (Fla.2001) (rejecting a claim of newly discovered evidence based on an assertion that a traffic stop was illegal because it was predicated on impermissible racial profiling where the claim of illegal discriminatory enforcement of the traffic laws was a claim that had been known for a number of years, as indicated in reported cases addressing the issue). This is an issue that the postconviction court may address on remand.
 

 [3]
 

 .
 
 The Washington Post
 
 article explains that this 1991 study "found that bullets packaged 15 months apart — a span that assumed separate batches of lead — had the exact composition, potentially undercutting the theory that each batch was unique [and] that bullets in a single box often had several different lead compositions.” Solomon,
 
 supra,
 
 atAOl.