*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0028p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 04-2128

JEROME DWIGHT TILL,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 03-00197—David W. McKeague, District Judge.

Argued: October 25, 2005

Decided and Filed: January 20, 2006

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; and ROSE, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Paul L. Mitchell, MITCHELL & ZAMBON, Grand Rapids, Michigan, for Appellant. B. Rene Shekmer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Mitchell, MITCHELL & ZAMBON, Grand Rapids, Michigan, for Appellant. John F. Salan, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

_____

**OPINION**

_____

BOGGS, Chief Judge. We affirm the conviction and sentence of Jerome Dwight Till for being a felon in possession of a firearm. We hold further that district judges who imposed sentences during the post-*Blakely v. Washington*, 542 U.S. 296 (2004), pre-*United States v. Booker*, 543 U.S. 220 (2005), period need not have made explicit reference to the 18 U.S.C. § 3553(a) sentencing factors in order for their identical, alternative sentences to be free of error under *Booker*.

_____

[*]The Honorable Thomas M. Rose, United States District Judge for the Southern District of Ohio, sitting by designation.

1

# I

On January 4, 2003, Officer Kasha Lowe stopped a car in Lansing, Michigan. There were two people in the car, driver Tracey Shauver and passenger Till. Shauver and Till were living together at the time. Lowe asked Shauver and Till for identification and discovered that Shauver had a suspended driver's license. Lowe arrested Shauver for this offense and secured Shauver's permission to search the car. Lowe discovered "two baggies of marijuana" in the glove compartment and "the butt of a gun" that was "sticking out between the seats." Lowe handcuffed Till, placed him in the police cruiser, and called for back-up. When officers examined the gun, they found it was loaded. At the scene, Lowe turned custody of Till over to Officer Tracy Jones ("Jones"). Jones transported Till to jail, where, during booking, officers found six crack rocks on his person.

Till entered a guilty plea to being a felon in possession of a firearm, but he later withdrew it. Shortly after his guilty plea, but before his withdrawal of it, Till admitted at an interview with police that he kept the handgun for the purposes of protection, and that he had possessed it for roughly three months prior to his arrest on January 4, 2003.

At trial, the district court admitted testimony about the marijuana and crack cocaine. Shauver testified for the government that the marijuana had not been in the glove compartment when she opened it to retrieve registration documents for Lowe. She testified further that Till stated to her that there was "weed" and a gun in the car that he hoped the arresting officer would not find.

At the sentencing hearing, Judge McKeague found that Till had a base offense level of 30 and a criminal history category of V. He sentenced Till to 120 months in prison, to be followed by three years of supervised release. The district court's official sentencing recommendation observed that

> [b]ased on a total offense level of 30 and a criminal history category of V, the guideline range for imprisonment is 151 to 188 months. However, pursuant to U.S.S.G. § 5G1.1(c)(1), the sentence may be imposed at any point within the guideline range, provided the sentence is not greater than the statutorily authorized maximum sentence. Therefore the guideline sentence becomes 120 months.

The judge further imposed a $2,400 fine, which was below the statutory and guidelines ranges of $250,000 and "$15,000 to $150,000," respectively, and a $100 special assessment, which matched the statutory and guidelines provisions. *Ibid*. The judge contemplated the possibility that the sentencing guidelines would be found to be advisory, rather than mandatory. He noted:

> The Court doesn't find that the guidelines reach an inappropriate result in this case, inasmuch as looking at the defendant's criminal history category, and the record he has, and the nature of the convictions that he has, it appears to me that 120 months is an appropriate sentence, even if the guidelines are advisory.
> . . . . [T]he Court . . . imposes the same sentence, if the guidelines are advisory, that the Court would if the guidelines are found to be mandatory."

Till was sentenced on August 17, 2004. He filed a timely Notice of Appeal of his sentence and conviction on August 27, 2004.

## II

Till makes two separate arguments for a new trial.

First, he argues that the district court abused its discretion when it admitted testimony relating to his possession of marijuana and cocaine. He argues that the "narrative of the firearm seizure could readily have been told without mentioning the marijuana in the glove compartment or the crack cocaine found on Mr. Till during the booking process." He argues further that the small size of the drug quantities seized (1.63 grams of crack cocaine, and 4.70 grams of marijuana) indicates "he was not carrying large quantities of marijuana and cocaine that required protection with a firearm." *Ibid.* This may all be true. Indeed, the district court acknowledged that "there is no showing in any case that a weapon is a necessity."

However, we hold that the district court reasonably concluded that the testimony as to drug possession was relevant in proving that the firearm was possessed by the defendant, rather than by Ms. Shauver, the driver of the car. There is strong authority for the proposition that evidence of drug possession can and perhaps ought to be admitted in cases of alleged firearm possession, partly to show motive for such possession. As the First Circuit wrote in *United States v. Smith*, 292 F.3d 90, 99-100 (1st Cir. 2002),

> "[s]everal of our sister circuits have approved the admission of evidence of a defendant's drug activities in a firearm possession case to show a motive or knowing possession of the firearm. *See, e.g., United States v. Thomas*, 242 F.3d 1028, 1031-33 (11th Cir.2001) (holding that evidence of defendant's drug dealing was admissible to prove knowing possession of firearms); *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir.1991) ("[E]vidence of narcotics trafficking may be properly admitted to show knowing possession of a weapon."); *United States v. Fuller*, 887 F.2d 144, 147 (8th Cir.1989) (holding that, "given the close and well-known connection between firearms and drugs," drug-related evidence was admissible to show motive to possess firearm); *United States v. Simon*, 767 F.2d 524, 527 (8th Cir.1985) (finding that evidence that defendant engaged in "drug packaging" at apartment where gun was found was probative of his possession of that gun, because of "known correlation between drug dealing and weapons"). (footnote omitted)

In *United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995), this court upheld admission of evidence regarding a defendant's criminal activity when such activity is "inextricably intertwined" with the charges. In *United States v. Luna*, 94 F.3d 1156, 1162 (8th Cir. 1996), the Eighth Circuit held that trial judges may properly admit evidence as to a defendant's conduct when it is "'so blended or connected, with the [conduct] on trial as that proof of one incidentally involve[s] the other[s]; or explains the circumstances; or tends to logically prove an element of the crime charged.'" (quoting *United States v. Bass*, 794 F.2d 1305, 1312 (8th Cir. 1986)).

We review evidentiary rulings of this kind for abuse of discretion. *United States v. Middleton*, 246 F.3d 825, 835 (6th Cir. 2001). The district court considered the admissibility of the evidence, weighing its possible probative value and possible prejudicial effect. The district court ruled that the testimony regarding the drug possession was *res gestae* and therefore properly part of the evidence that ought to come before a jury. The drug possession would help, for instance, prove motive for firearm possession. The court's analysis on this point was not trivial. It is worthy of reproduction here:

> The Court has carefully considered the issue, the Court finds that the drugs that were found in the car and on the defendant at the time of his arrest are relevant

evidence in this case because of the propensity of people involved with drugs to carry weapons.

> The drugs are admissible as background and res gestae evidence, and that leaves only, then the question of whether under [Federal Rule of Evidence] 403, the balancing test would indicate that they should be excluded because their prejudice–their prejudicial far out–their prejudicial value outweighs their probative value in this case.
>
> Unfortunately for the defendant, the case law is clear in this matter. In *United States v Hardy*, 228 F.3d 745, the Sixth Circuit stated that, quote, "Background or res gestae evidence consists of those other acts that are inextricably intertwined with the charged offense or those acts the telling of which is necessary to complete the story of the charged offense . . . .
>
> Proper background evidence as [sic] a causal, temporary or spatial connection with the charged offense, typically such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness' testimony or completes the story of the charged offense." All of those descriptors apply in this case.
>
> And in the case of *United States v. Olender*, O-L-E-N-D-E-R, 338 F.3d 629 [(upholding the admission of ammunition into evidence as probative of a charge of firearm possession)], the Sixth Circuit applied those Hardy standards to facts that are very analogous to the facts that are presented in this case, and upheld the admission of similar evidence. . . .
>
> Because the marijuana and cocaine is admissible as temporally and spatially-connected background evidence, and is directly probative of defendant's knowing possession of the firearm, its probative value cannot be said to be substantially outweighed by its potential for unfair prejudice.

We agree with the district court's reasoning and hold that the district court did not abuse its discretion in admitting the evidence about the marijuana and cocaine.

Till's second argument relies on a First Circuit case for the proposition that the district court should have instructed the jury of the "'limited purpose'" for which drug evidence could be considered. *See United States v. Smith*, 292 F.3d 90, 100 (1st Cir. 2002). Part of the *Smith* case turned on the question whether the defendant had control over an apartment where a drug operation was headquartered. The district court admitted testimony that addressed the question of control, including, chiefly, testimony related to the nature and particulars of the drug operation. Before that testimony was given, and again before the jury deliberated, the trial judge gave the following instruction:

> And you're about to hear some evidence that will come in for a limited purpose. You may remember the charge here--and the government has to prove it beyond a reasonable doubt--is that Mr. Smith was illegally possessing a firearm and ammunition. You're going to hear about some activities now which are not charged against Mr. Smith and the only reason this is being allowed in is so that you can understand the nature of the relationship between Ms. Moore and Mr. Smith and also that you can evaluate whether or not Mr. Smith had control over the apartment. It's up to you to find those issues, but that's the only purpose for which you can consider this. You cannot consider this information as anything being charged against Mr. Smith, because it's not.

(quoted in *United States v. Smith*, 292 F.3d at 96).

Neither *Smith* nor any controlling precedent requires such an instruction, and we decline to insist upon one. The testimony relating to Till's drug possession was fairly short. The prosecution did not linger on it in a manner that might have heightened any prejudicial impact it could have had on the jury. Moreover, the evidence as to Till's firearm possession was strong. Shauver testified that, while they were sitting in the back of the police cruiser waiting for Officer Lowe to search the car, Till told her that he hoped that Lowe wouldn't find the gun or some weed he had hidden in the car (the crack cocaine was on his person at that time, not in the car). She indicated at trial that she would not have consented to the search of the car had she known Till had introduced marijuana and the firearm into the car. *Id*. at 152. Till's ex-girlfriend, Sheri Brethauer, whom Till left to move in with Shauver approximately two months before the arrest, testified that she had seen Till purchase the gun in Detroit and, indeed, that he had compelled her to pay for it, at gunpoint. *Id*. at 163-64. She testified further that she had seen him with it on almost a "daily basis" for several months, that "[h]e never went anywhere without it, and he kept it on the table by the bed when he slept at night." *Id*. at 164. She testified, finally, that she saw Till take the gun with him when she finally asked him to move out of her house. *Id*. at 165. Her son, Jonah Brethauer, testified that he saw Till with the gun in his mother's house "around September" of 2002, and that he, Jonah, had examined the gun at that time and found it loaded. *Id*. at 178-79. Given the brevity of the discussion of the drugs at trial, the absence of any Sixth Circuit precedent requiring a "limited-purpose" instruction, and the strength of the evidence against Till with respect to his possession, the district court's decision not to give such limited-purpose instructions cannot constitute abuse of discretion.

### III

Till also appeals his sentence. After assigning Till an offense level of 30 and a criminal history category of V under the United States Sentencing Guidelines, Judge McKeague imposed a prison term of 120 months, the statutory maximum. The Guidelines sentencing range as calculated by the court would have been 151 to 188 months.

Under *Booker*, as further explicated by this court in *United States v. Davis*, 397 F.3d 340 (6th Cir. 2005), and *United States v. McDaniel*, 398 F.3d 540 (6th Cir. 2005), district courts may no longer treat the Sentencing Guidelines as mandatory. Till notes that the district court imposed a two-level enhancement based on its finding that his firearm was stolen and a four-level enhancement based on its further finding that the firearm possession was in connection with felony possession of marijuana and cocaine. At the sentencing hearing, Till objected to the two enhancements on the basis of *Blakely*, so his objection is preserved for review.

This court reviews a *Booker*-related resentencing claim *de novo*, where the defendant has preserved his objection to the sentencing calculation. *United States v. McDaniel*, 398 F.3d at 546-47.

Here, the district court admitted freely that it was making the factual findings as to the stolen status of the gun and the connection between the gun possession and drug dealing. It imposed a sentence of 120 months' imprisonment under the then-mandatory Federal Sentencing Guidelines.

However, the district court did not stop there. Anticipating the possibility that the Supreme Court would find the mandatory federal sentencing guidelines to be unconstitutional, and following the Sixth Circuit's *en banc* order in *United States v. Koch*, 2004 WL 1870438 (6th Cir. Aug. 13, 2004), the district court explicitly contemplated the defendant's sentencing both within and without the pre-*Booker*, mandatory sentencing scheme. The court imposed an identical alternative sentence of 120 months.

It now seems clear that this court will not remand for *Booker* resentencing where the court below has expressly contemplated an advisory-only Guidelines regime and imposed an identical alternative sentence. As we wrote in *United States v. Strbac*, 2005 WL 953845, 129 F. App'x 235, 238 (6th Cir. April 25, 2005), explicit discussion of an identical alternative sentence "seems to be precisely the type of 'clear and specific evidence,' *United States v. Barnett,* 398 F.3d 516, 529 (6th Cir. 2005), that is needed to rebut the presumption of prejudice that this Circuit affords defendants . . . under post-*Booker* plain-error review, *see id.* at 526-29."

We do see a benefit, however, in clarifying one feature of the jurisprudence on how this Circuit will review sentences imposed during the post-*Blakely*, pre-*Booker* period. It might be argued, based on the small number of cases in which we have considered such sentences, that we require the district courts to have explicitly considered § 3553(a) sentencing factors when imposing identical alternative sentences. We do not. Moreover, we hereby make clear that we decline to require explicit reference to the § 3553(a) factors in the imposition of identical alternative sentences. In *United States v. Chandler*, 419 F.3d 484, 486 (6th Cir. 2005), we noted that the district court had

> not only determined the Defendant's sentence pursuant to the Guidelines, but also treated the Guidelines as advisory and sentenced the Defendant pursuant to the sentencing factors outlined in 18 U.S.C. § 3553(a). [FN1] Thus, the imposition of the Defendant's sentence does not implicate the Sixth Amendment. *United States v. Booker*, 125 S.Ct. at 750 ("If the Guidelines ... could be read as merely advisory ... rather than required, their use would not implicate the Sixth Amendment.... For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.").

> > FN1. The district court stated: "[W]hile the sentence in this case will be determined pursuant to the sentencing guidelines, the Court will at the same time make this sentence pursuant to the factors set forth in 18 U.S.C. § 3553(a), treated in the guidelines as advisory only, inasmuch as the 6th Circuit has told us that we should sentence under the guidelines, but also use an alternative sentence."

*Id*. at 486.

In *United States v. Beck*, 2005 WL 2108332 (6th Cir. Sep. 1, 2005) (unpublished) we cited *Chandler* in a manner that might be interpreted to suggest that we intended to require that sentencing judges have made explicit reference to the § 3553(a) factors while imposing identical alternative sentences:

> We have held, however, in cases in which the district court not only imposed a Guidelines sentence but, treating the Guidelines as advisory, imposed as well an alternative sentence pursuant to the sentencing factors set out in 18 U.S.C. § 3553(a), that the alternative sentence does not implicate the Sixth Amendment and the sentence need not be remanded on account of *Booker,* but must be reviewed for reasonableness. *See United States v. Chandler,* --- F.3d ---- (6th Cir.2005). But here, although the magistrate judge imposed an alternative sentence, he did not cite to 18 U.S.C. § 3553(a), or provide sufficient information with regard to that sentence to permit a reasonableness review.

We must therefore vacate Beck's sentence and remand for re-sentencing in order to afford the magistrate judge the opportunity to re-sentence Beck. *Beck* at *3.

We write to clarify that we require no such explicit reference.  Indeed, the language of *Beck* notes that the magistrate judge *neither* cited the § 3553(a) factors *nor* furnished enough information to enable review for reasonableness.  This portion of the *Beck* opinion should not be read to require the formality of mentioning the magic words "§ 3553(a) factors" when imposing identical alternative sentences.  We do require, consistent with *Chandler* and *Beck*, that sentencing judges must offer some measure of reasoning when imposing sentences under the advisory-only Guidelines.  However, we decline to require a special incantation that includes the phrase "§ 3553(a) factors."

## IV

If the § 3553(a) factors are not a sine qua non of identical alternative sentencing in the post-*Blakely*, pre-*Booker* period, they are an essential part of our reasonableness analysis.  The *Booker* Court required that the reasonableness of a sentence should be assessed through consultation of these factors.  *Booker*, 125 S.Ct. at 767.

The sentence in this case is reasonable.  The district court went through the Guidelines calculation, which, absent the statutory maximum, would have produced a sentence longer than the one ultimately imposed.  The district court explained the reasons for its sentence, taking into account Till's lengthy track record of violence both in and out of prison.

## V

We AFFIRM the conviction and sentence of the district court.