**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0808n.06
Filed: November 19, 2007

**No. 06-3747**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| v. | ) | |
| | ) | |
| JEFFREY CLARK, | ) | |
| | ) | **OPINION** |
| Defendant-Appellant. | ) | |
| _____ | ) | |

Before: KEITH, GRIFFIN, Circuit Judges, and VAN TATENHOVE, District Judge.[*]

**VAN TATENHOVE**, District Judge. Jeffrey Clark was charged with conspiracy to distribute and possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 846, and possession with intent to distribute approximately one kilogram of cocaine in violation of 21 U.S.C. § 841(a)(1). Clark was convicted on both counts and now challenges his conviction and his sentence. Regarding his conviction, Clark argues that the evidence was insufficient to convict him and that his federal prosecution should have been precluded on double jeopardy grounds. As to his sentence, Clark first claims that the district court erred in finding him responsible for at least 3.5 kilograms but less than 5 kilograms of cocaine and that the court failed

---

[*]The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

to set forth specific findings for its decision. Second, Clark maintains that the district court did not properly consider the sentencing factors in 18 U.S.C. § 3553. For the reasons set forth below, the Court will affirm Clark's conviction and reverse and remand his sentence for additional findings regarding the drug quantity.

## I. Background

On March 10 or 11, 2003, Mark Denomy, a police officer from Oregon, Ohio, on assignment with the Drug Enforcement Agency ("DEA"), received word from a jailhouse informant that Adrian Maldonado was a supplier of drugs. Undercover Agent Denomy contacted Maldonado and agreed to purchase a kilogram of cocaine at a Meijer store on March 13. Around 8:30 P.M. on that day, Denomy met Maldonado inside Meijer, and arranged to meet in the parking lot to exchange the cocaine. Eventually, a gray Dodge Dakota pulled up alongside Denomy's vehicle and dropped Maldonado off. Denomy could only see that a white male was driving the vehicle. Maldonado sold Denomy approximately one kilogram of cocaine, agreeing that Denomy could pay him the next day. Upon receiving the cocaine, Denomy returned directly to the Oregon Police Department. Denomy continued a relationship with Maldonado, resulting in the later controlled purchase of other drugs, including a pound of black tar heroine on April 22 and five kilograms of cocaine on May 2. Maldonado was finally arrested and then charged on October 6, 2004.

Also on the 13th, Agent Mark Apple, among other officers, provided surveillance and security for Denomy. Agent Apple was employed with the Ohio Attorney General's office, Bureau of Criminal Investigation. He determined from the Dodge Dakota's license number that it was from

a leasing company in Toledo. After Denomy had completed his transaction and left the scene, Apple observed what appeared to be a second drug transaction between the occupants of the Dakota and the occupants of another vehicle in the nearby Applebee's parking lot. After that second transaction and with the knowledge that Maldonado lived in Fremont, Ohio, Apple and Officer St. Clair of the Ottawa County drug task force headed toward Fremont. Apple alerted the Fremont police that they were attempting to locate the Dakota. Apple, accompanied by a local Fremont police officer, eventually spotted the vehicle on State Street and "called out a lane violation to the uniformed [local] officers who made the stop." Defendant Clark was driving. Local officers found a small amount of loose cocaine in the car with Apple observing the stop from down the street. Maldonado was released, but Clark was taken into custody. In the vehicle, the officers found a police scanner set to local police frequencies and a Floyd County, Kentucky sheriff's badge. The Floyd County sheriff's office denied knowing of Clark or Maldonado.

Adrian Maldonado testified at Clark's trial, subsequent to Maldonado entering a guilty plea on drug/conspiracy charges but before being sentenced himself. His plea was contingent upon his further complete cooperation with authorities. Maldonado testified that he met Clark in 1999 or early 2000 through a mutual acquaintance and supplied Clark with "mostly cocaine" but also marijuana:

> Q.   And let's talk about the cocaine. How often would you distribute to Mr. Clark?
> A.   Sometimes it would be on a weekly basis; if not, every two weeks or so.
> Q.   How much would you give him at a time?
> A.   It would range from half an ounce to a couple ounces, four ounces of cocaine.
> Q.   And how long did this continue on until?
> A.   I'd say for a period of about two years or so.

. . . .

Q.    So if I understand you correctly, you dealt with him from sometime in '99 to 2000 all the way to 2003; is that correct?

A.    Yes.

Q.    Can you estimate how much cocaine you would have sold him during that period of time?

A.    Probably in excess of five keys.

Q.    How about the marijuana?

A.    Probably about 40 pounds.

The testimony also reveals that Maldonado would sometimes front—give drugs up front for later payment—drugs to Clark.

Regarding the events of March 13, Maldonado testified that, because his license was suspended, he had asked Clark to drive him to Elkhart, Indiana, to pick up two kilograms of drugs, one kilogram of which was later sold to Agent Denomy and the other sold in the Applebee's parking lot in accordance with Agent Apple's observations that evening. In exchange for the ride, Maldonado agreed to forgive some of Clark's drug debt. Maldonado also testified that Clark brought about a gram and a half of cocaine with him on the trip and used it on the way to Elkhart and back. This testimony ostensibly accounts for the cocaine residue found in Clark's vehicle by local authorities in Fremont. On cross-examination, Maldonado estimated that he himself had distributed about 100 kilograms of cocaine in the past.

Clark was convicted by a jury on both counts. He now appeals his conviction and sentence.

**II. Analysis**

**A.    Sufficiency of the Evidence**

Clark argues that "there is insufficient evidence that [he] entered into an agreement with

Maldonado to violate the drug laws and participate in the conspiracy." Specifically, he contends that Maldonado's testimony cannot establish the conspiracy beyond a reasonable doubt.

The Court reviews Clark's challenge to the sufficiency of the evidence to determine "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wang*, 222 F.3d 234, 237 (6th Cir. 2000). In applying this standard, the Court makes a *de novo* assessment when, like here, defendant properly moves for acquittal under Federal Rule of Criminal Procedure 29 at trial. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006) (citations omitted); *see also United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).

Initially, Clark notes that Maldonado received a substantial reduction in his potential sentence in exchange for cooperating with the Government, to include but not limited to testifying in Clark's trial. As an attack on Maldonado's credibility, however, Clark's argument is a non sequitur:

> "[a]ttacks on witness credibility are simple challenges to the quality of the government's evidence and not the sufficiency of the evidence." *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991). In assessing the sufficiency of the evidence, "we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury." *United States v. Wright*, 16 F.3d 1429, 1440 (6th Cir. 1994). "[W]e draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

*United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).

Next, Clark argues that the substance of Maldonado's testimony, even if taken as true, cannot establish Clark as a coconspirator. He asserts that Maldonado's testimony merely establishes association between the two and cites, for example, *United States v. Hernandez*, 896 F.2d 518, 519

(11th Cir. 1990). In *Hernandez*, the case against a co-defendant, Hector Giral, consisted of "Giral's presence in Aquino's car and at the trunk when Aquino delivered the package to Garcia, Giral's walking away after catching Garcia's eye, Giral's talking to a dead phone, and Giral's prior conviction of cocaine possession." *Id.* In *Hernandez*, the evidence against Giral stemmed solely from surveillance.

Here, Maldonado provided direct testimony implicating Clark in the conspiracy. Specifically, he stated that Clark knew the reason for traveling to Elkhart and agreed to drive in exchange for relief from drug debt. Furthermore, Maldonado's testimony was consistent with the observations of officers who witnessed the two on March 13. For instance, Mark Apple testified to observing what he believed was a second drug transaction in the Applebee's parking lot after the controlled sale to Agent Denomy. Maldonado confirmed this observation with his testimony. He also explained that Clark had brought his own personal supply of cocaine to use on the trip, thereby accounting for the residue found in Clark's vehicle when the two were stopped in Fremont.

Thus, unlike the facts in *Hernandez*, the evidence against Clark did not stem solely from surveillance. Instead, Maldonado's direct testimony implicated Clark in the conspiracy. This Court has held that "'the uncorroborated testimony of an accomplice may support a conviction under federal law.'" *United States v. Frost*, 914 F.2d 756, 762 (6th Cir. 1990) (quoting *United States v. Gallo*, 763 F.2d 1504, 1518 (6th Cir. 1985), *cert. denied*, 475 U.S. 1017 (1986)). Accordingly, the evidence in this case, reviewed in the light most favorable to the prosecution, is such that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Wang*, 222 F.3d at 237.

**B.      Double Jeopardy**

When stopping Clark, the local authorities in Fremont, Ohio, initiated a dog-sniff alert, finding "a small zip-lock type [b]aggie approximately one and a half by two inches with some white powder on the floor." Officer Daniels, a local police officer at the scene of the stop, additionally testified, "there was . . . also a little chunk [of] matter on the seat which also tested positive for cocaine . . . ." At that point, Clark was arrested and charged with possession of the small amount of residual cocaine found in his vehicle. Clark was subsequently tried in state court but ultimately acquitted of this charge. He argues that this state court acquittal precludes his federal prosecution.[1]

The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Usually, prosecution in both state court and federal court for offenses that would otherwise constitute the same "offence" under the Fifth Amendment if tried successively in the same forum is constitutional under the dual sovereignty doctrine. *See Heath v. Alabama*, 474 U.S. 82, 88-89 (1985). "The dual sovereignty doctrine holds that the double jeopardy clause 'does not apply to suits

---

[1]Clark filed a Motion to Dismiss the federal indictment on Fifth Amendment, double jeopardy, grounds but failed to object to the Magistrate Judge's Report and Recommendation which recommended denying his motion. While ordinarily failure to object does foreclose appeal, *see United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981), "[i]n *Thomas v. Arn*, the Supreme Court 'emphasized that, because the [Walters] rule is a nonjurisdictional waiver provision, the Court of Appeals may excuse the default in the interests of justice.'" *Souter v. Jones*, 395 F.3d 577, 585 (6th Cir. 2005) (quoting 474 U.S. 140, 155 (1985)). Here, Clark cites a "fractured client-attorney relationship" as cause, and the government does not raise the failure to object as an issue. The default will, therefore, be excused in the interests of justice.

by separate sovereigns, even if both are criminal suits for the same offense.'" *United States v.*

*Louisville Edible Oil Prods., Inc.*, 926 F.2d 584, 587 (6th Cir. 1991) (citation omitted).

The Supreme Court suggested an extraordinarily limited exception to the dual sovereign

doctrine when it noted in dicta:

> [The record] does not support the claim that the State of Illinois in bringing its
> prosecution was merely a tool of the federal authorities, who thereby avoided the
> prohibition of the Fifth Amendment against a retrial of a federal prosecution after an
> acquittal. It does not sustain a conclusion that the state prosecution was a sham and
> a cover for a federal prosecution, and thereby in essential fact another federal
> prosecution.

*Bartkus v. Illinois*, 359 U.S. 121, 123-24 (1959). The Supreme Court articulated this "sham

prosecution" notion in the context of finding that a state prosecution for the same crime upon which

the defendant was acquitted in federal court was constitutional under the Fifth Amendment, as made

applicable to the states under the Fourteenth Amendment. *Id.* Clark argues that this exception to

the dual sovereignty doctrine applies in his case.

Some courts have questioned whether the Supreme Court even intended to establish a sham

prosecution exception to the dual sovereignty doctrine. "The *Bartkus* Court's failure to identify a

particular instance of a sham prosecution may mean that the exception does not exist." *United States*

*v. Angleton*, 314 F.3d 767, 773-74 (5th Cir. 2002);[2] *see also United States v. Baptista-Rodriguez*, 17

---

[2]In the district court's opinion in *Angleton*, the court could cite only two instances of reported cases "in which circuit courts have remanded a case to the district court for further fact-finding on the applicability of the *Bartkus* exception." *United States v. Angleton*, 221 F. Supp. 2d 696, 720-21 (S.D. Tex. 2002). In one case, the Second Circuit expressed concern over a state court conviction followed by a federal *in rem* forfeiture action, when there was evidence that "the state would receive a very large percentage of any federal forfeiture proceeds." *Id.* (citing *United*

F.3d 1354, 1361 (11th Cir. 1994) (questioning whether there is a valid sham prosecution exception, but simply ruling that if there is, the defendant in that case could not prevail). The Seventh Circuit has been even more incredulous of a sham prosecution exception to the dual sovereignty doctrine:

> The case of *Bartkus* . . . supposedly recognized an exception to the dual sovereignty doctrine in situations where one sovereign's prosecution serves as a tool for a second sovereign that previously prosecuted the defendant. We have questioned whether *Bartkus* truly meant to create such an exception, and we have uniformly rejected such claims [in which appellants argue the applicability of a *Bartkus* exception].

*United States v. Brocksmith*, 991 F.2d 1363, 1366 (7th Cir. 1993). Since *Bartkus* was decided in 1959, this Circuit has never ruled that a prosecution violated double jeopardy protections under the "sham prosecution" theory.

As evidence that *Bartkus* applies, Clark cites the cooperative nature of the Maldonado-Clark conspiracy investigation between federal and state authorities. Investigatory cooperation, however, is sanctioned in *Bartkus* itself. 359 U.S. at 122-23. The Fifth Circuit has set forth the standard for at least theoretically invoking *Bartkus*:

> The key, however, is whether the separate sovereigns have made independent decisions to prosecute, or whether, instead, "one sovereign has essentially manipulated another sovereign into prosecuting," or because the state and federal prosecutor are the same person. The facts of *Bartkus* demonstrate that the degree of cooperation between federal and state authorities cannot, by itself, constitute a sham prosecution.

*Angleton*, 314 F.3d at 774 (citations omitted). Nothing in the record suggests that Ohio authorities

---

*States v. G.P.S. Automotive Corp.*, 66 F.3d 483, 496 (2d Cir. 1995)). In the second case, the Ninth Circuit reversed the district court's *Bartkus*-based dismissal of the indictment. *Id.* at 721 (citing *United States v. Bernhardt*, 831 F.2d 181, 183 (9th Cir. 1987)).

did not make their own determinations regarding the prosecution of Clark for the residual amount

of cocaine found in his vehicle in Fremont. Additionally, this state prosecution regarding simple

possession was of a very different nature than the conspiracy charge against Clark in federal court.

Even if in the same forum, it would have been proper under double jeopardy jurisprudence to first

prosecute Clark for the "residual cocaine" possession and then for the conspiracy to possess and

distribute much greater quantities of cocaine as charged in the federal indictment:

> In determining whether a defendant has been subjected to successive prosecutions for
> the same offense, this Court applies the "same elements" test originally set forth in
> *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932).
> "That test asks whether each offense contains an element not contained in the other.
> A defendant will be considered placed in double jeopardy only if 'every violation of
> one statute entails a violation of another.'"

*Murr v. United States*, 200 F.3d 895, 900-01 (6th Cir. 2000) (citations omitted). Here, the

*Blockburger* test is satisfied when comparing the charges and discrete allegations in the state

prosecution with the charges in the federal prosecution. *Id.* at 901.

The entire weight of precedent demonstrates the chimeral nature of *Bartkus's* "sham

prosecution" exception to the dual sovereignty doctrine. Consequently, Clark's conviction as it

pertains to his double jeopardy challenge is affirmed.

## C. Drug Quantity Calculation

At sentencing, Clark's counsel argued that Clark should be held responsible only for the one

kilogram of cocaine sold to Agent Denomy as alleged as an overt act in Count I of the indictment.

This would place Clark's base offense level at 26 under the Sentencing Guidelines. Guidelines

Manual § 2D1.1(7) (Nov. 2006) (at least 500 grams but less than 2 kilograms of cocaine). The

Government argued that Clark should be held responsible for seven kilograms of cocaine as recommended in the Presentence Investigation Report. This figure was derived by adding (1) the one kilogram sold to Agent Denomy; (2) one kilogram sold in the Applebee's parking lot after the sale to Denomy (Agent Apple observed the transaction, though Maldonado testified as to the quantity); and (3) five kilograms based on the testimony of Maldonado that he had supplied Clark with "in excess of five keys" over the course of their relationship. Holding Clark responsible for seven kilograms of cocaine would have placed him at a base offense level of 32 under the Guidelines. Guidelines Manual § 2D1.1(4) (Nov. 2006) (at least 5 kilograms but less than 15 kilograms of cocaine). The district court adopted neither party's position and found Clark responsible for at least 3.5 kilograms but less than 5 kilograms, placing his base offense level at 30. Guidelines Manual § 2D1.1(5) (Nov. 2006).

After hearing argument from both parties, the judge stated: "It seems to me for a combination of reasons, which I will articulate, that the appropriate subsection of 2D1.1(c) is 5, which is a level 30." After commenting on letters submitted on Clark's behalf, the judge continued, "I believe my finding with regard to the level 30 disposes of the greater amount of your memorandum on sentencing, Mr. [Defense Counsel]; am I correct?" Defense counsel responded, "[t]hat's correct, Your Honor, as it relates to the 2D1.1 determination." The judge did not further elaborate on the factual underpinnings of his determination.

Clark maintains that the record only supports a finding by a preponderance of the evidence that he be held responsible for the two kilograms that were sold by Maldonado on the night of March

-11-

13 to Denomy and in the Applebee's parking lot. This would place Clark at a base offense level of 28 under the Guidelines. Guidelines Manual § 2D1.1(6) (Nov. 2006). Clark argues: "It would appear that the jury rejected Maldonado's estimate that he distributed in excess of Five (5) kilograms to the Appellant[.] The jury special verdict was [that] Clark was responsible for Five Hundred (500) to Five Thousand (5,000) grams of cocaine." We disagree that Clark may only be held responsible for at most two kilograms and review for clear error. *See United States v. Berry*, 90 F.3d 148, 152 (6th Cir.), *cert. denied*, 519 U.S. 999, 136 L. Ed. 2d 389, 117 S. Ct. 497 (1996).

Clark's argument regarding consistency with the jury verdict fails for two reasons: first and dispositively, "[i]t is well-settled in this circuit that the quantity of drugs involved is not an element of the offense charged and that a sentencing judge is not bound by the jury's findings regarding the quantity . . . ." *McCoy v. United States*, Nos. 96-2374 and 96-2376, 1998 U.S. App. LEXIS 9703, at *10 (6th Cir. May 11, 1998). Second, Clark's argument presumes that the jury's determination necessarily excludes all past dealings between Clark and Maldonado, because two kilograms plus the five kilograms from past dealings exceeds the outer scope of the jury's special verdict. However, an equally consistent explanation is that the jury found Clark responsible for the two kilograms and then discounted Maldonado's past-dealing estimate in deciding that Maldonado supplied Clark with about three kilograms previously.

The record suggests at least two scenarios under which Clark might reasonably be held responsible for at least 3.5 kilograms but less than 5 kilograms of cocaine. Under either scenario, Clark is responsible for the one kilogram sold to Agent Denomy, as he was convicted of possession

with intent to distribute with regard to that kilogram. Next, Clark concedes that the judge could find by a preponderance of the evidence that Clark is responsible for the kilogram sold in the Applebee's parking lot. If the district court were to so find, then Maldonado would only need to have supplied Clark with 1.5 kilograms in the past for Clark to be responsible for a total of at least 3.5 kilograms. If the district court were not to find Clark responsible for the "Applebee's cocaine," then Maldonado would only need to have supplied Clark with 2.5 kilograms in the past to reach the base offense level of 30. Either scenario provides for a heavy discount on Maldonado's estimate that he provided Clark with in excess of five kilograms in the past.[3] As Maldonado could have been honestly mistaken in making his estimate, the actual determination that Clark, in total, was responsible for at least 3.5 kilograms substantially errs on the side of caution in making an estimate. *See United States v. Baro*, 15 F.3d 563, 569 (6th Cir. 1994).

While the Court might reasonably come to the conclusion that Clark is responsible for between 3.5 and 5 kilograms of cocaine, the Court did not set forth any basis for actually doing so. Accordingly, Clark also argues that the Court erred in not setting forth specific facts in the record regarding the evidentiary foundation of its decision. The Sixth Circuit in *United States v. Long* stated, "[t]he district court must set forth the evidence upon which it relies and make specific

---

[3]As Maldonado's testimony is competent evidence for determining Clark's guilt beyond a reasonable doubt (*see supra*, regarding sufficiency of the evidence), it too is competent evidence for making a preponderance finding. *See United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 846 (1999).

findings that are supported by a preponderance of the evidence."[4] 190 F.3d 471, 478 (6th Cir. 1999); *see also United States v. Angle*, 254 F.3d 514, 519 (4th Cir. 2001). In rejecting Clark's contentions to the contrary, we determined that Clark might be found responsible for more than two kilograms of cocaine. However, the Court is left to speculate on what basis the district court in fact rested its decision regarding drug quantity. This is particularly the case when the district court adopted neither the Appellant's position on drug quantity, nor the quantity range recommended in the Presentence Investigation Report (the "Report") and argued by the Government.

In sentencing a defendant, this Circuit requires "literal compliance" with Federal Rule of Criminal Procedure 32(i)(3)(B), which states, "[a]t sentencing, the court must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing[.]" *United States v. Hurst*, 228 F.3d 751, 760 (6th Cir. 2000) (citations omitted). At sentencing, the district court directly asked defense counsel whether the court's "finding with regard to the level 30 disposes of the greater amount of [Clark's] memorandum

---

[4]For this proposition, the *Long* court cited *United States v. Baro*, 15 F.3d 563, 569 (6th Cir. 1994). In *Baro*, the court did not espouse a per se rule on making specific findings. Rather, in that case, the government successfully argued that the defendants should be responsible for 50, rather than 49, kilograms of cocaine. The government argued that an inference of one additional kilogram could be drawn from "testimony regarding travel by [associates who bought from defendants], coupled with a pattern of kilogram-quantity sales of cocaine by the [defendants]." *Id.* The court held, "the sentencing judge may not, without further findings, simply sentence a defendant based on conjecture." *Id.* The court directed that if the district court were to impose responsibility for the one kilogram, it "should explicitly set forth the evidence on which it relies . . . ." *Id*.

on sentencing." At that time, defense counsel had the opportunity to flesh out the precise underlying facts on which the court based its decision but declined to do so. Nevertheless, while this colloquy was arguably a ruling on Clark's objections to the drug quantity as recommended in the Report, the record is too ambiguous to demonstrate literal compliance with Rule 32, as no factual explanation, however brief, accompanied the purported ruling. *See, e.g., United States v. Orlando*, 281 F.3d 586, 601 (6th Cir. 2002) (remand for resentencing for failure to identify particular evidence leading to a dollar amount determination that the parties contested in a money laundering case). Case law suggests that specific references to testimony may adequately serve in support of a judge's ultimate determination regarding drug quantities, but this also was not done at Appellant's sentencing. *United States v. Wilson*, 168 F.3d 916, 925 (6th Cir. 1999). Accordingly, the Court will remand for resentencing.

On remand, if the district court's factual findings lead to the same conclusion that Clark ought to be held responsible for at least 3.5 but less than 5 kilograms of cocaine, then it is sufficient for the judge to state those findings on the record and reimpose the same sentence, though he is not obliged to do so. Clark argues that the judge additionally erred by insufficiently considering the sentencing factors of 18 U.S.C. § 3553(a). As discussed below, we disagree, and unless the sentencing judge finds Clark responsible for an amount other than at least 3.5 kilograms but less than 5 kilograms, there is no need to revisit § 3553(a) on remand.

**D.      Application of 18 U.S.C. § 3553(a) Factors.**

Clark argues that "the Court did only at most a cursory review of the factor's set forth in 18

U.S.C. 3553(a)." He claims that the district court did not consider, *inter alia*, "the nature and circumstances of the offense" and argues that "[t]he Court did not make findings that the sentence imposed would reflect the seriousness of the offense." Clark argues that the court did not consider that he suffers from bi-polar disorder and did not consider that two co-defendants received sentences of 51 months (or 57 months) and 46 months. Even though those co-defendants entered into plea agreements, Clark argues that his sentence of 108 months is disparate.

Pursuant to the Supreme Court's decision in *Booker*, the Sentencing Guidelines are advisory, though the sentencing judge must "consult [the] Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 264 (2005). This Court reviews sentencing decisions for unreasonableness. *Id.* In addition to requiring the consideration of the Guidelines and policy statements of the Sentencing Commission, 18 U.S.C. § 3553(a) requires the consideration of other factors, which include the "nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed" to, *inter alia*, "reflect the seriousness of the offense;" "the kinds of sentences available;" and "the need to avoid unwarranted sentence disparities."

Subsequent to *Booker*, sentences that fall within the correctly-calculated Guidelines range are presumptively reasonable in the Sixth Circuit, though this presumption is rebuttable. *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). The Supreme Court recently affirmed the use of this appellate presumption in *Rita v. United States*, 551 U.S. ___, 127 S. Ct. 2456, 2459 (2007). A sentencing court need not recite the § 3553 factors. *Williams*, 436 F.3d at 709; *see also United*

*States v. Till*, 434 F.3d 880, 887 (6th Cir. 2006). Rather, "[t]he sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita*, 127 S. Ct. at 2468. "Unless a party contests the Guidelines sentence generally under § 3553(a)—that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way—or argues for departure, the judge normally need say no more." *Id.*

Assuming that Clark was responsible by a preponderance for at least 3.5 but less than 5 kilograms of cocaine, Clark's sentence fell within the correct Guidelines range. The district court began its analysis at an offense level of 30 with a Criminal History Category of III. The court granted Clark a two-level reduction under the Guidelines for being a minor participant under the Guidelines Manual § 3B1.2(b) (Nov. 2006). At an offense level of 28 with a category III criminal history, the Guidelines range is 97 to 121 months. The court sentenced Clark in the middle of this range at 108 months. Because the court sentenced Clark within the Guidelines range, the rebuttable presumption of reasonableness applies, and we find that Clark has failed to overcome that presumption.

During the sentencing hearing, the district court noted review of the sentencing memorandum submitted by Clark's counsel. The court also noted the review of three letters submitted on behalf of Clark and made specific comment regarding the letter submitted by Clark's wife. The court heard argument from Clark's counsel, such as an explanation of the details of Clark's criminal history, and

heard statements from Clark himself. As noted, the district court agreed that Clark was entitled to

a two-point reduction for his role as a minor participant. This "role in the offense" reduction was

not recommended in the Presentence Investigation Report. The court specifically referenced §

3553(a) when imposing its sentence:

> It never gives – hardly ever gives a judge great pleasure to sentence anyone who has the capacity for being a productive citizen. But we judges are bound by the law, and we're bound to follow that law. I've reviewed this case both under the guidelines, which I've just articulated, and Section 3553(a) of United States Code, Title 18.

> I am, as you know, Mr. Clark, familiar with this case, since it was on my docket and I served as the trial judge. I am familiar with your personal history. I believe that the sentence that I will impose within that guideline will reflect both the seriousness of the crime, protect the public from further such criminal activity, and deter others from the same.

> . . . .

> Pursuant to the Sentencing Reform Act of 1984 as amended, and upon consideration of Title 18, United States Code Section 3553(a), it is my judgment that the defendant, Jeffrey T. Clark, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 108 months on each count of the indictment as to which a jury found him guilty. Such sentence is to be served concurrently. I request that the Bureau of Prisons give consideration to designating this defendant to the federal correctional institution at Milan, Michigan.

Finally, after outlining the provisions of supervised release subsequent to Clark's imprisonment, the

court heard and granted defense counsel's request to recommend that "the Bureau of Prisons [] offer

the defendant the opportunity for the intensive drug treatment program of 500 hours [at Milan,

Michigan]."

With regard to § 3553(a), we find that Clark's sentence is reasonable if Clark is responsible

for at least 3.5 kilograms but less than 5 kilograms of cocaine and that the district court preserved

a sufficient record to make a finding of reasonableness pursuant to *Williams* and *Rita.* The district court explicitly referenced § 3553(a) apart from the Guidelines. While the court did not proceed factor by factor through the content of § 3553(a), the court indicated familiarity with and consideration of Clark's personal background, which is supported by the court's references to the Presentence Investigation Report and letters on Clark's behalf and by the court hearing Clark's statements and the arguments of his counsel. The court made a recommendation that Clark be housed at the Federal Correctional Institute at Milan, Michigan, and further recommended, upon Appellant's motion, that Clark be admitted to a drug treatment program therein. This Court has specifically found that the recommendation of a prison facility with drug treatment capabilities is an indication of a reasoned sentence. *Williams*, 436 F. 3d at 708 (citing 18 U.S.C. § 3553(a)(2)). While Clark argues that a "sentence in the 63-78 month guideline range would adequately protect and sufficiently punish the Defendant," this is mere disagreement with the court's decision. *See United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006) ("The fact that the district court did not give the defendant the exact sentence he sought is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects."). The district court, buttressed by the analytical work of the Sentencing Commission, expressly found that its sentence would "reflect both the seriousness of the crime, protect the public from further such criminal activity, and deter others from the same." *See also Rita*, 127 S. Ct. at 2463 (noting that the mandate of the Sentencing Commission is "to write Guidelines that will carry out" the objectives of § 3553(a)).

The district court's judgments with regard to making calculations within the Guidelines additionally demonstrate a reasoned consideration throughout the sentencing process. First, the court rejected the Government's argument, embodied in the Presentence Investigation Report, that Clark ought to be held responsible for at least 5 kilograms but less than 15 kilograms of cocaine. Guidelines Manual § 2D1.1(c) (Nov. 2006). Instead, the court held Clark responsible for at least 3.5 kilograms but less than 5 kilograms of cocaine. Second, the court granted Clark a two-point reduction for his role as a minor participant in the offense without such a recommendation in the Presentence Report.

With respect to Clark's co-defendants' sentences, the disparity between the sentences of Clark and his co-defendants is explained by the plea agreements entered into by the co-defendants. Nonetheless, this Court has described 18 U.S.C. § 3553(a)(6)—which directs the courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"—as having a nationwide scope. This Court has, therefore, stated that:

> reducing a defendant's sentence to bring it in line with the sentences of co-conspirators also introduces a disparity between that defendant's sentence and those of other similar defendants nationwide. *United States v. LaSalle*, 948 F.2d 215, 218 (6th Cir. 1991). In *LaSalle*, this court held that departing from the Guidelines "simply to eliminate a disparity as compared to his codefendants' sentences is unreasonable." *Ibid*.

*United States v. Epley*, 52 F.3d 571, 583-84 (6th Cir. 1995). While *Epley* is a pre-*Booker* case considering downward departure under mandatory Guidelines, this Court has noted its persuasive relevance post-*Booker*. *United States v. Thompson*, 218 Fed. Appx. 413, 417 (6th Cir. 2007).

Finally, Clark does not discuss additional factors that may have been relevant to his co-defendants' sentences, such as the extent of the co-defendants' criminal histories as opposed to his own.

### III.  Conclusion

For the foregoing reasons, Clark's conviction is affirmed; Clark's sentence is vacated; and, this matter is remanded for resentencing, at which time the district court shall set forth the factual basis for any determinations regarding quantity of drugs.