COOK, Circuit Judge.
Richard Rhodes appeals his conviction of firearm-related offenses, challenging the denial of his motion in limine and the sufficiency of the perjury finding. Discerning no abuse of discretion in the in-limine ruling and sufficient support for the perjury-based enhancement, we affirm.
*792 I
In January 2006, police responded to a report that two men were arguing at an intersection and that one of them brandished a gun. As police drove to the intersection, they saw a man matching the reported description. This man, who turned out to be Rhodes, parked at a gas station and entered its convenience store. Meanwhile, officers looked inside his car, where they saw a distinctive blue hat with gold embroidery fitting the reported description. With some difficulty (Rhodes tried to run), officers arrested Rhodes and found a pistol in his car. Rhodes denied owning the pistol, explaining that he took it from “Mark,” a neighbor who threatened Rhodes with the pistol during a fight.
Three months later, Rhodes had another run-in with the police. When executing a search warrant at an apartment after a controlled buy there, police found a surprised Rhodes asleep on a bed in that apartment. On the floor of an open, walk-in closet near the bed, police found three boxes containing 146 bullets sitting in plain view just beneath the hanging clothes. These bullets were the size — 9 mm — to fit the pistol seized from Rhodes in January. Officers also found a business card from Rhodes’s probation officer and the police report from the January arrest.
In the second bedroom, officers awakened Rhodes’s roommate, Alfonso Johnson, and found a 9-mm Luger loaded with ten rounds, three of which matched those in the bullet boxes. They also discovered cocaine in Johnson’s room and one bag each of cocaine and marijuana on the counter in the apartment’s common area. Rhodes had no drugs in his room, but the cocaine found in the living-room sat under a hat with gold embroidery, a red version of the blue hat found in Rhodes’s car in January.
The government charged Rhodes with being a felon in possession of a firearm (from the January arrest) and a felon in possession of ammunition, but did not charge him with any drug offenses. At trial, Rhodes claimed to know nothing of the ammunition in his closet or the drug-dealing at his apartment. According to Rhodes, he ended up in the wrong place at the wrong time; not only had he never owned a handgun, but he also denied living at the apartment, saying that he primarily stayed with his girlfriend or his mother, keeping the apartment only because his lease had yet to expire. The informant who purchased cocaine at the apartment bolstered Rhodes’s testimony to the extent that he described the seller as approximately 160 pounds; Rhodes weighs 285 pounds.
The jury convicted Rhodes, and at sentencing, the district court imposed a two-level obstruction-of-justiee enhancement for Rhodes’s perjuring himself by disavowing knowledge of ammunition in his closet. Rhodes received a 78-month sentence, the lowest in the Guidelines range.
Rhodes’s appeal attacks the two-level enhancement, as well as the denial of his motion in limine aimed at excluding evidence of drugs found at the apartment under Federal Rules of Evidence 402 (irrelevance) and 403 (substantially more prejudicial than probative).
II
A. Denial of Motion in Limine
We review the denial of a motion in limine for abuse of discretion, United States v. Goosby, 523 F.3d 632, 638 (6th Cir.2008), defined as a “definite and firm conviction that the trial court committed a clear error of judgment.” United States v. Hunt, 521 F.3d 636, 648 (6th Cir.2008) (citations omitted).
Rhodes argues that the evidence of the marijuana and cocaine in his apart *793 ment either had no relevance to his knowing possession of ammunition or created unfair prejudice by encouraging jurors to impermissibly infer guilt from character, which the district court allegedly exacerbated when Rhodes testified and the court allowed evidence of his prior marijuana felony conviction. We uphold the district court’s decision to admit the drug evidence for at least two reasons. First, the drugs were res gestae, or “background,” evidence. This court has explained:
“Proper background evidence has a causal, temporal or spatial connection with the charged offense,” and includes evidence that is “a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness’s testimony, or completes the story of the charged offense.”
United States v. Martinez, 430 F.3d 317, 335 (6th Cir.2005) (quoting United States v. Hardy, 228 F.3d 745, 748 (6th Cir.2000)). Evidence of the controlled purchase and drugs found at the apartment initiated this case; the drugs explain why the police raided Rhodes’s apartment. Moreover, the three baggies in the common area adjacent to Rhodes’s bedroom had a spatial and temporal connection to the ammunition. Rhodes mischaracterizes the facts when he complains that “the drugs in question ... were not found anywhere near Defendant.”
Second, the drugs provided a motive for possessing the ammunition: protecting the drug stash. Contrary to Rhodes’s view that this case has “nothing to do with drugs,” the district court followed the accepted view that guns (and naturally, ammunition) are “tools of the trade” used to protect drugs and drug money. See United States v. Hardin, 248 F.3d 489, 499 (6th Cir.2001) (“This Court has held many times that guns are ‘tools of the trade’ in drug transactions.”). Further linking Rhodes and his ammunition to drug activity, officers found cocaine under a hat similar to one he wore on the day of his January arrest. On these facts, the district court could conclude that the drugs’ “probative value” was not “substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....” See Fed.R.Evid. 403 (emphasis added); see also United States v. Logan, 250 F.3d 350, 368 (6th Cir.2001) (in Rule 403 review, “we maximize the probative value of the evidence and minimize its potential prejudice to the defendant”).
United States v. Till supports admitting the drug-related evidence. 434 F.3d 880 (6th Cir.2006). In Till, even though the government only charged a felon-in-possession-of-a-firearm offense, the district court admitted evidence of drugs found on the defendant’s person and in his car. The Till panel rejected the contention that the government could recount discovering the firearm without alluding to the drugs. Instead it held that the district court properly admitted the drug-related evidence as “temporally and spatially-connected background evidence” and “because of the propensity of people involved with drugs to carry weapons.” Id. at 884. Till also considered unfavorably another of Rhodes’s arguments — that small drug quantities do not require armed protection. Id. at 883. While Rhodes attempts to differentiate Till by emphasizing that he was not “alleged to be involved with drugs,” he misses the point. Declining to charge a drug offense does not bar appropriate trial reference to drugs. See United States v. Stone, 218 Fed.Appx. 425, 438-39 (6th Cir.2007) (given the connection between firearms and drugs, finding evidence of firearms relevant even though the government only charged conspiracy to sell narcotics); United States v. McCutchen, 150 Fed.Appx. 517, 522 (6th Cir.2005) (in felon-in-possession case, no plain error *794 in admitting evidence that defendant retrieved drugs from cabinet where that evidence showed familiarity with the house and constructive possession of a firearm in different cabinet).
Rhodes also argues that the evidence of his prior mai’ijuana felony compounded the unfair prejudice created by admitting the other drug-related evidence. This argument fails because the charge against Rhodes — being a felon in possession of ammunition and a gun — already tipped the jury to his prior felony. See 18 U.S.C. § 922(g). Moreover, presumably to draw the sting out of the prior felony, Rhodes himself took the initiative and addressed the prior felony, a strategic choice that undermines his unfair-prejudice claim.
B. Obstruction-of-Justice Enhancement
Rhodes also contends that the district court made insufficient findings to support his obstruction-of-justice enhancement for perjury, a subject for tripartite review:
First, we review the district court’s finding of facts underlying the enhancement for clear error. Next, the district court’s conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact which we review de novo. Finally, once the district court has determined that the defendant has obstructed justice ... we review the enhancement de novo.
United States v. Chance, 306 F.3d 356, 389 (6th Cir.2002) (internal citations omitted).
A defendant commits perjury, triggering a two-level enhancement under U.S.S.G. § 3C1.1, “if she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.” United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (emphasis added). To avoid applying this enhancement to every defendant who testifies but fails to convince a jury, the Supreme Court instructs the “district court to address each element of the alleged perjury in a separate and clear finding.” Id. at 95, 113 S.Ct. 1111. Here, the district court stated:
Well, obviously I ... will consider the fact that the ... jury which heard all the testimony in this case found beyond a reasonable doubt that he illegally possessed ammunition at his house.
I don’t even have to go back and talk about whether he obstructed justice by his testimony regarding the ... incident on the street ... I’m only referring to his testimony regarding the ammunition. And I do find that there was sufficient evidence that beyond a reasonable doubt he was guilty of possessing ammunition as a convicted felon. It was in his bedroom and it was ... pretty clear that he had control and possession over the ammunition.
And ... his testimony then [in] which he absolutely denied that he knew anything about that ammunition at all, would constitute an obstruction of justice. That is false testimony.
And that’s the risk that you take I guess taking the witness stand in a matter of this kind when there is evidence that ... would convince a jury beyond reasonable doubt and ... convinces this Court beyond a reasonable doubt that he had knowledge of and had actual possession of ammunition which is a violation of the federal statute.
Rhodes misplaces his reliance on United States v. Paulette, 457 F.3d 601 (6th Cir.2006), where the district court identified the perjurious statement as “a certain statement regarding his address ... [aimed at persuading] the finder of fact to a particular position or finding.” Id. at 605. That district court elaborated little on this vague statement: “Because of what *795 the defendant was attempting to do in that statement that made it a material statement and the court finds that based on that he was impeached, it was clearly from the evidence a false statement....” Id. Rhodes embraces Paulette as supporting his insufficiency argument, contending that the Paulette court vacated the sentence in the face of a more detailed finding than occurred here. Yet the Paulette district court recited the elements of perjury without tying them to any specific facts. That is, the findings failed to “encompass[] all of the factual predicates for a finding of perjury.” Id. at 607 (quoting United States v. Lawrence, 308 F.3d 623, 632 (6th Cir.2002)).
Contrasting with the Paulette court’s failure to set out the factual predicates, the district court here simply neglected to name the three legal elements of perjury. Even without these “magic words” though, the district court satisfied the Dunnigan test. First, it identified a false statement: Rhodes unequivocally claimed ignorance of the stored ammunition. Second, this false statement counted as material because the only disputed element of Rhodes’s case involved whether he “knowingly possessed the firearm and ammunition specified in the indictment.” See United States v. Mackey, 249 Fed.Appx. 420, 423 (6th Cir.2007) (quoting United States v. Schreane, 331 F.3d 548, 560 (6th Cir.2003)); see also United States v. Seymour, 38 F.3d 261, 264 (6th Cir.1994) (holding that where a district court’s findings “encompass all elements of perjury except materiality, Dim-nigan does not require a remand because materiality is a question of law”). Finally, the district court addressed willfulness by noting that “[the ammunition] was in his bedroom and it was ... pretty clear that he had control and possession over [it]” and “... his testimony then [in] which he absolutely denied that he knew anything about that ammunition at all, would constitute an obstruction of justice.” Rhodes’s lack of equivocation on the matter eliminates the chance of “confusion, mistake, or faulty memory.” Dunnigan, 507 U.S. at 94, 113 S.Ct. 1111.
Accordingly, we affirm Rhodes’s obstruction-of-justiee enhancement because the district court sufficiently explained its perjury findings. See United States v. Thomas, 272 Fed.Appx. 479, 488 (6th Cir.2008) (table) (district court’s implicit finding that statements were willful sufficed to establish the requisite factual predicates for perjury despite absence of explicit statements about materiality or willfulness); see also United States v. Hooper, 65 F.3d 169, 1995 WL 514649, at *5 (6th Cir.1995) (per curiam) (table) (upholding obstruction-of-justice enhancement despite absence of materiality and willfulness findings, where “the court rejected the totality of [the defendant’s] testimony” and the defendant “denied any culpability” but was actually found to be a leader).
Ill
For these reasons, we affirm Rhodes’s conviction and sentence.